[ Filed June 10, 1890.]

## AMERICAN MORTGAGE CO., RESPONDENT, *v.* J. H. AND W. R. HUTCHINSON, APPELLANTS.

JURY TRIAL—WAIVER OF—POWER OF THE COURT.—A circuit court has no authority to try an action at law involving an issue of fact without a jury, unless a jury trial is waived in the manner provided in the Civil Code. If such court deem such a case a proper one to be determined upon the law, it must direct the jury to return a verdict in favor of the party which the court considers entitled to it under the proofs.

SECTION 3027, HILL'S CODE, CONSTRUED—BONA FIDE PURCHASER—WHO IS.—A subsequent purchaser against whom an unrecorded conveyance is void, under section 3027, Hill's Code, must be a purchaser in good faith and for a valuable consideration of "the same real property, or a portion thereof," included in the unrecorded conveyance; and must be a purchaser under a form of conveyance or other instrument, which purports to convey the property. Hence a purchaser under a mere quitclaim deed, which only purports to remise, release and quit-claim the right, title and interest of the grantor in and to the property, will not be regarded "a purchaser of the same real property or any part thereof."

CASE IN JUDGMENT.—Where F. was owner of a parcel of land which he conveyed to E., but E. having failed to pay for the land conveyed it back to F., who neglected for several years thereafter to record the deed, and in the meantime E. executed a deed of quit-claim to D., who took the deed without actual notice of the prior conveyance by E. to F., except such as might be presumed or inferred from the character of the

deed or the condition of the deed record of the county, and D. thereafter executed a quit-claim deed to the land back to E., who then executed a like deed to the land to W., who finally executed a deed of warranty to it to C., and several quit-claim deeds were thereafter made to it by C. and his grantees, containing covenants of warranty against the grantors, and it was finally purchased by the respondent under a mortgage foreclosure against some of the intermediate claimants, the land during all the time remaining vacant and unoccupied; *held*, that the said deeds did not constitute the grantees therein purchasers of the same real property or any part thereof, conveyed by E. to F., within the meaning of said section of the Code. *Quære*, whether if E., when he executed the deed to D., had had possession and seisin of the land, and D. had taken possession thereof under the deed to him, it would have constituted him such subsequent purchaser under said section of the Code.

APPEAL from Union county: JAS. A. FEE, judge.

The respondent herein, a private corporation, commenced an action against the appellants to recover possession of certain real property situated in said Union county, alleging that they wrongfully withheld from said respondent the possession thereof.

The appellants denied the allegations contained in the complaint and alleged ownership of the property in themselves.

A reply was filed denying the allegations of new matter set up in the answer.

Thereupon the said parties entered into the following stipulation: It is hereby stipulated by and between the plaintiff and defendant in the above-entitled action, that the following is a complete and perfect abstract of all the conveyances to the land in controversy in this action, to wit: The east one-half of the southwest one-fourth of section 23, township 2 south, of range 39 east; and that said abstract may be received and read in evidence at the trial of said cause in lieu of the originals or certified copies:

"State of Oregon to E. J. Flanery.   Grantor conveys by said deed, dated December 9, 1872; recorded October 3, 1873, book "B," page 247; consideration, $100.

"E. J. Flanery to John E. Chrisman.   Grantor conveyed by warranty deed, dated October 23, 1873; recorded October 23, 1873; book "B," pages 248 and 663; consideration, $50.

"John E. Chrisman to T. H. Foster.   Grantor conveyed by warranty deed subject to mortgage to the State, dated

October 10, 1874; recorded June 10, 1876, book "B," page 664; consideration, $20.

"T. H. Foster and wife to F. Elliot. Grantor conveyed this and 240 acres of other land, by deed of bargain and sale, dated April 24, 1876; recorded June 20, 1876, book "B," page 665; consideration, $1,400.

"F. Elliot and wife to T. H. Foster. Grantor conveyed this and 240 acres of other land, by quit-claim and special warranty against grantors, or others claiming by, through or under them, dated December 31, 1877; recorded February 23, 1883, book "F," pages 666 and 698; consideration expressed, $1. The true consideration is as follows: The grantor, F. Elliot, having failed to pay the consideration for the conveyance from T. H. Foster and wife to him, re-conveyed to Foster and wife for that consideration, to wit, $1,400.

"T. H. Foster and wife to S. O. Swackhamer. Grantor conveyed deed of bargain and sale, dated May 2, 1881; recorded May 2, 1881, book "E," page 184; consideration, $500. That subsequent to the execution and record of the last-named conveyance, and prior to the hereinafter described conveyance from T. H. Foster and wife to M. B. Baird, the said S. O. Swackhamer and wife re-conveyed the said land to said T. H. Foster by quit-claim deed, for the consideration of $500, but that said deed was not placed on record.

"F. Elliot and wife to Van B. DeLashmutt. Grantors conveyed this and 240 acres of other land by quit-claim deed, dated June 16, 1881, and recorded June 20, 1881, book "E," page 247; consideration, $800. The grantee took this conveyance without actual notice of the prior conveyance of F. Elliot and wife to T. H. Foster, except such as will be presumed or inferred from the character of the deed, or the condition of the deed record of Union county, Oregon.

"Van B. DeLashmutt and wife to F. Elliot. Grantor conveyed this and 240 acres of other land by quit-claim

deed, dated August 10, 1881; recorded September 2, 1881, book "E," page 328; consideration, $1.

"F. Elliot and wife to T. A. Wood. Grantor conveyed this and 240 acres of other land by quit-claim deed, dated August 21, 1881; recorded September 2, 1881, book ——, page 329; consideration, $500. Grantee took this conveyance without personal notice of the prior conveyance of this land by F. Elliot and wife to T. H. Foster, except such as will be presumed or inferred from the character of the deed, or the condition of the deed record of Union county, Oregon.

"T. A. Wood to Brazella Chapman. Grantor conveyed this and 240 acres of other land by quit-claim deed, dated November 3, 1881; recorded November 10, 1881, book "E," page 399; consideration, $500.

"Brazella Chapman to T. A. Wood. Grantor conveyed this and 240 acres of other land by quit-claim deed, dated November 10, 1881; recorded September 7, 1882, book "F," page 307; consideration, $500.

"T. A. Wood to J. H. Cavanaugh. Grantor conveyed this and 240 acres of other lands by warranty deed, dated September 19, 1882; recorded September 27, 1882, book "F," page 309; consideration, $1,200.

"J. H. Cavanaugh to D. K. Smith. Grantor conveyed this and 240 acres of other lands by quit-claim deed, with special warranty against grantor, or any others claiming through or under him, dated March 5, 1883; recorded April 5, 1883; book "F," page 758; consideration, $650.

"D. K. Smith to J. H. Cavanaugh. Grantor conveyed this and 240 acres of other lands by quit-claim deed, with special warranty against grantor, and all others claiming under or through him, subject to the mortgage of the American Mortgage Co. of Scotland, limited, dated April 27, 1883; recorded April 30, 1883, book "G," page 55; consideration, $1.

"T. H. Foster and wife to M. B. Baird. Grantor conveyed by warranty deed, dated February 9, 1884; recorded February 22, 1884, book "G," page 606; consideration, $800.

"J. H. Cavanaugh to D. K. Smith. Grantor conveyed this and 80 acres of other lands by quit-claim deed, with special warranty against grantor, and all others claiming through or under him, dated May 1, 1884; recorded May 17, 1884, book "G," page 705; consideration, $3,000.

"D. K. Smith to J. H. Raley. Grantor conveyed this and 240 acres of other lands by quit-claim deed, with special warranty against grantor, and all others claiming through or under him, dated December 26, 1884; recorded January 13, 1885, book "H," page 399; consideration, $559.

"The American Mortgage Company of Scotland (limited), *v.* D. K. Smith, J. H. Raley, M. A. Raley, C. P. Huntington, Charles Miller, W. R. S. Foye, and Albert Gullatin. Foreclosure of mortgage and sale on execution thereunder, and purchased by this plaintiff at said sheriff's sale on the —— day of ———, 1885. Said foreclosure was had under mortgage held by this plaintiff against this D. K. Smith on said land and other lands, which was recorded in mortgage record, book —— at page ——, on the —— day of ———, 188—, the consideration being $———; that said sheriff's sale was afterwards confirmed, and deed regularly issued to this plaintiff; that neither these defendants nor those through whom they claim were parties to said foreclosure.

"J. H. Hutchinson and W. R. Hutchinson *v.* Nelson Shoonover, administrator, and the widow and heirs of M. B. Baird, deceased. Foreclosure of mortgage and sale by the sheriff on execution thereunder, and purchase by these defendants at said sheriff's sale on the tenth day of April, 1888, and certificate of said purchase issued by said sheriff to them, and that said land has not been redeemed. Said foreclosure and sale were had under a mortgage in favor of these defendants and against M. B. Baird and wife, the consideration being the sum of $1,200. This plaintiff was not a party to said foreclosure.

"It is further agreed that the recitals and memoranda following each conveyance in said abstract may be admitted in evidence as explanatory thereof. It is also

agreed that said land was vacant and unoccupied during all the time covered by the conveyances mentioned in said abstract. This agreement shall not be held binding on either of the parties in any subsequent suit pertaining to this property."

The case was tried by a jury and the only evidence adduced at the trial was the stipulation above set out; and verdict was rendered for defendant, which was afterwards, on motion of plaintiff, set aside and a new trial granted. A second trial was had before a jury and the same evidence and no other offered; and after instructions by the court, the jury again rendered verdict for the defendants. Plaintiff again moved the court to set aside the verdict and for judgment upon the stipulation, which motion the court granted, and then gave judgment for plaintiff for possession of the land in question, plaintiff having waived all claim for damages, which is the judgment appealed from.

*J. W. Shelton,* for Appellants.

If the stipulation showed on its face that the respondent was entitled to recover in the action, still the trial court had no power beyond the setting aside of the verdict and the granting of a new trial

It is a settled law of this State that a grantee in a quit-claim deed acquires no title to the land sought to be conveyed if his grantor had none which he could lawfully convey. *Baker* v. *Woodward,* 12 Or. 3; *Richards* v. *Snyder and Crews,* 11 Or. 501, 511; *Swift* v. *Mulkey,* 14 Or. 59, 64; *Guest* v. *Packwood,* 34 Fed. Rep. 368, 372; *Hastings* v. *Nissons,* 31 Fed. Rep. 597. To the decisions of our own State may be added *Villa* v. *Rodriguez,* 12 Wall. 323, 338; *May* v. *LeClaire,* 11 Wall. 217, 232; *Rothschild* v. *Boelter,* 18 Minn. 365; *Hutchins* v. *Com'rs of Carver Co.,* 16 *id.* 14; *Brown* v. *Jackson,* 3 Wheaton, 449, 451; *Baker* v. *Humphrey,* 101 U. S. 494, 499; *Dickerson* v. *Colgrove,* 100 U. S. 578, 584; *Postel* v. *Palmer,* 71 Iowa, 157; *Watson* v. *Phelps,* 40 *id.* 482; *Mann* v. *Best,* 62 Mo. 491; *Kearney* v. *Vaughan,* 50 *id.* 284.

*R. Eakin,* for Respondent.

A quit-claim deed first recorded will convey a fee simple title to the grantee therein as against a prior unrecorded deed. *Fox* v. *Hall*, 74 Mo. 315; *Pettingill* v. *Devin*, 35 Iowa, 344; *Fash* v. *Blake*, 38 Ill. 363; *Brown et al.* v. *Banner C. & C. O. Co.*, 97 Ill. 214; *Rowe* v. *Beckett*, 30 Ind. 154; *Mansfield* v. *Dyer*, 131 Mass. 200; *Chapman* v. *Sims*, 53 Miss. 154; Pom. Eq. Jr., §§ 758, 759 and 760.

*Baker* v. *Woodward*, 12 Or. 3, only applies to the effect of a quit-claim deed as against an outstanding equity, hence the statement in the opinion in that case that "the grantor can, by such kind of deed, convey the residuum of the estate he has, and no more," has reference to the legal effect of the deed standing alone, and does not determine its effect under the recording act. *Allison* v. *Thomas*, 72 Cal. 562; *Graff* v. *Middleton*, 43 Cal. 340; *Frey* v. *Clifford*, 44 Cal. 343; *McConnel* v. *Reed*, 4 Scam. 117; 38 Am. Dec. 124; *Brown* v. *Jackson*, 3 Wheat. 448; *Richardson et al.* v. *Levi et al.*, 67 Tex. 359; *Hamilton* v. *Doolittle et al.*, 37 Ill. 482. A quit-claim deed as part of a chain of title is sufficient. 36 Fed. Rep. 478; *Snowden* v. *Tyler*, 21 Neb. 199; *Raymond* v. *Morrison*, 59 Iowa, 371; *Bryant* v. *Buckner*, 2 S. W. Rep. 452.

THAYER, C. J., delivered the opinion of the court.

The circuit court erred in trying the case after having set aside the verdict of the jury. It has no authority to try any action at law unless a jury trial is waived in the manner provided in the Civil Code. If the court had deemed it its duty to determine the case in favor of the respondent upon the law, it should have directed a verdict in favor of the respondent at the trial. As the case stands this court has no alternative but to reverse the judgment and remand the cause for a new trial. This is sufficient to dispose of the case so far as this court is concerned; but as it must go back for a new trial, it becomes our duty to declare the law applicable to the matters involved. The question presented is whether a conveyance of real property, not recorded as provided in title I of chapter XXI,

Ann. Code, is void as against a subsequent purchaser of the same property whose conveyance is first recorded, where the purchase is by quit-claim deed and there is no evidence, aside from the record, showing the subsequent purchaser to have been a purchaser in good faith and for a valuable consideration, and whether the execution of a mere quit-claim deed to real property by a grantor who had previously conveyed it by deed to another grantee, but which deed was not recorded at the time of the execution of the quit-claim deed, constitutes a conveyance of "the same real property."

Counsel for respondent virtually concedes that a purchaser under a quit-claim deed takes subject to outstanding equities in the property existing at the time of the purchase whether the purchaser had knowledge of them or not; but he contends that such a deed, under the recording act, stands upon the same footing as other forms of conveyance, and, if first recorded, is as effectual to annul a prior unrecorded deed to the same property.

The question has given rise to much deliberation on the part of courts, and earnest discussion among law writers, though it is generally conceded that a grantee in a mere quit-claim deed acquires no right against outstanding equities which were valid against his grantor. *Postel* v. *Palmer*, 71 Iowa, 157; *Martin* v. *Morris*, 62 Wis. 418. Such also is the doctrine of the supreme court of the United States and of the courts of this State, as will be seen by a reference to the authorities cited in the appellants' brief herein; but it is claimed by many that such a deed effectually destroys the right of a grantee under a prior deed not recorded as required by the registry act, although it would not affect a prior equity in his favor which was binding upon the grantor. This, to my mind, is a somewhat strange view. Why the rights of the grantee under the prior deed should be cut off when a charge upon the property created in his favor by the grantor would not be, seems remarkable. It may be said that the prior grantee had the right to, and should have put his deed upon record; but it may, with as

much reason, be said that he should have had the charge upon the property put in a form that would have entitled it to be recorded, and had it so done.    The claim, it seems to me, amounts to this:   If the owner of real property were to create a trust against it, in favor of another, and then execute a quit-claim deed to the property to a third person, it would not affect the trust, although the grantee in the quit-claim deed had no knowledge of it; but if he had executed a deed outright to the *cestui que trust*, and then quit-claimed his interest in the property to a third person, and the prior deed not have been recorded, the rights of the grantee in the prior deed would be lost.   According to that kind of logic the grantee in the prior deed would have a better standing in such a case if his deed were not witnessed or acknowledged so as to entitle it to be recorded; as he would then clearly have an outstanding equity which would be shielded from the effects of the quit-claim deed. The form of the deed under which the respondent claims title herein is not set out in the stipulation further than it is stated to be a quit-claim deed.   We must, therefore, infer that it is a remise, release and quit-claim of the right, title and interest of the grantor in and to the property in suit.   It did not purport to convey the property to the grantee, it only conveyed to him such right as the grantor might have therein; and it would be difficult to perceive how the former could have expected to acquire any right in the premises unless the latter might own an interest in them.    The terms of the deed were satisfied whether the grantor was owner of the property in fee or had no estate whatever in it.    The grantee bargained for no quantity or quality of estate; he bought whatever the grantor might have, be the same more or less; and I do not see what legerdemain could be resorted to which would vest him with an interest that the grantor had previously divested himself of, and was then owned by a third party.

Purchasers of real property should be left free to make their own bargains, and the courts have no right to undertake to give them something which they did not buy and

the vendor did not own.    The office of a quit-claim deed is
well understood, and although it is as effective, under
modern legislation, to convey all the estate which can be
transferred by a deed of bargain and sale, yet it shows
upon its face that the grantee therein only contracts for
such title to the property as the grantor has.    Such a deed
under section 3004, Ann. Code of Oregon, is sufficient to
pass all the estate which the grantor could lawfully convey
by a deed of bargain and sale; but a material difference is
still recognized between the two forms of conveyance.    A
grantor, under the former conveyance, only intends ordi-
narily to convey such right to, or interest in, the property
as he may have, and the grantee does not expect to acquire
anything beyond that; while under the latter, the parties
usually intend and expect a transfer of the property itself.
It would be absurd for a grantor under a mere quit-claim
deed to undertake to claim that he took title to the property
freed from the previous acts of the grantor affecting that
title.    There is nothing in the nature of that character of
conveyance which assures the grantee indemnity from
such acts.    He has no reason to believe that he has pur-
chased a clear title to the property or anything more than
what the terms of his deed indicate.    He does not under-
take to purchase what his grantor has already sold and
conveyed to another, whether the deed of conveyance is
registered or unregistered, but he purchases what the
grantor has remaining, if anything.    This view, I think,
is sustained by a majority of the cases cited by respond-
ent's counsel herein, and I believe that it is by the weight
of authority generally.    In the earlier case,—*Brown* v.
*Jackson*, 3 Wheat. 450,—which is cited by said counsel,
such a deed was held by the supreme court of the United
States not to affect a prior unrecorded deed where its
language showed that it was only intended to operate upon
the right, title and interest which the grantor had at the
time of its execution.    What else a strictly quit-claim deed
could operate upon I am not able to discover.    In *McCon-
nell* v. *Read*, 38 Am. Dec. 124, an early Illinois case, cited

by said counsel, the language of the court is well calcu-
lated to be misleading as regards the nature and character
of a quit-claim deed.    At pages 126, 127, the court says: "A
deed of release and quit-claim is as effectual for the purpose
of transferring title to land as a deed of bargain and sale; and
the prior recording of such a deed will give it a preference
over one previously executed, but which was subsequently
recorded.    In this respect there is no distinction between
different forms of conveyance.    As a general rule the one
first recorded must prevail over one of older execution,
when made in good faith, and when it appears to have
been the intention of the parties to convey again the same
lands which had been previously conveyed.    But where
the terms of the second deed do not necessarily embrace
the lands previously conveyed, but, on the contrary, are
such as to show that it was not the intention of the grantor
to include them, the court will give it such construction as
not to embrace them, and will not allow it to operate to
the prejudice of the purchaser."    In that case one Arnett
was owner of 80 acres of land, and on the twenty-first day
of March, 1835, executed to the plaintiff a deed of release
thereof, which was recorded on the same day; and on the
first day of July, 1837, also executed to plaintiff a deed of
bargain and sale for the same land, confirming and
explaining the former deed of release.    The defendant
gave in evidence a deed from Arnett to one Rixford, dated
May 12, 1827, and recorded October 1, 1836; and also
several other deeds, constituting a connected chain of title
to the said land from Rixford to himself.    The court held
that the deed of release from Arnett to the plaintiff, if
unexplained, would transfer the land, the title to which
the grantor had not previously divested himself by a valid
transfer duly recorded.    But that the plaintiff had furnished
such evidence of the intention of the grantor by introducing
the deed of bargain and sale from Arnett to himself as
forbade such an interpretation of the conveyance, and
sustained the defendant's prior deed, concluding from the
extraneous evidence that it might be fairly inferred that

Arnett only intended by the quit-claim deed to transfer all right, title and interest therein which he then had. According to this decision, the plaintiff would have been secure in his title to the land under his deed of release if he had been content with it; but in order to make assurance doubly sure, he, two years thereafter, unfortunately obtained the second deed, which enabled the court to ascertain what the grantor's intention was in the first one, and this resulted in his losing the property.

I think the case was correctly decided, but do not agree with the views expressed in the opinion announced by the learned court. In my opinion the court was in error in holding that the prior recording of a deed of release and quit-claim would give it a preference over one previously executed, but which was subsequently recorded; also in its holding that the words, "remise, release and forever quit-claim all right, title and interest to all and every part, etc., unexplained would transfer the tract of land designated, of the title to which the grantor had not previously divested himself, by a valid transfer duly recorded." Nor do I admit that if said words unexplained would have had the effect to transfer such title to the said grantee, that they could be so explained as to convey an opposite meaning, by showing that the grantor at a subsequent time executed to him a second deed declaring what his intention and design were in making the first one; or that words in a deed, having a fixed and settled meaning, can be explained in that way to mean something different from what they purport to in the instrument, and which the law attaches to them. If such rule were to obtain, the tenure by which real property is held would be very insecure. The latter case and others following it seem to have gotten the Illinois courts into a line of error as to the effect of a quit-claim deed, which has become chronic, and from which they are unable to extricate themselves. In *Brown et al. v. The Banner Coal & Oil Company*, 97 Ill. 214,[1] in which case the question arose, the supreme court of that State seemed to realize its helpless condition and inability to rid

(1) 35 Am. Rep. 105.

itself of the unfortunate precedent which had been estab-
lished. Chief Justice Dickey, in speaking for the court,
says: "Counsel for appellants insist with much force that
the grantee in such a quit-claim deed as that of Pollock,
made in 1865"—a deed of all right, title, interest, .claim or
demand of the grantor in and to the property—"is not a
subsequent purchaser in good faith of the same thing
which was conveyed by his former deed to Brown.
Were this is an open question before us, the suggestions
presented in their argument would be entitled to very grea
consideration; but the question is settled in this State by
a line of authorities, which constitute a rule of property
and ought not to be disturbed by the courts." So the
court, following the "line of authorities," held that as the
deed did not contain words manifesting an intention not to
include lands previously granted, or words suggestive of
a former conveyance of the same land by the grantor, the
grantee therein would be a purchaser thereof and pro-
tected by the registry act. It must, it seems to me, be
humiliating to be compelled to make such a holding.
The idea that the deed in question did not manifest an
intention not to include lands previously granted, I can
only regard as preposterous. Words may be, and often
are, inserted in that form of deed which change its nature;
but it then ceases to be a quit-claim deed and becomes in
effect a deed of bargain and sale. The Texas courts seem
to have had much experience with that class of cases.
The supreme court of that State, in *Richardson et al.* v.
*Levi et al.*, 67 Tex. 359, which is one of the cases cited
by respondent's counsel, held, that a deed which pur-
ports to convey only the right, title and interest of the
grantor, will not protect the grantee against prior un-
registered instruments; but not so where the deed pur-
ports to convey more than such right, title or interest.
In that case the granting clause in the deed was,
"grant, bargain, sell, demise, release and forever quit-
claim unto the said ———, his heirs and assigns, the
following lots of land, etc., and the court held that the

grantee therein had his election in what way to take, and might take what either of these words would convey; that he was not restricted by the fact that his estate under one of the words would be of less value than under another; that he might therefore escape being charged with notice under the "quit-claim" by electing to take under the "grant, bargain and sale."

There is a class of cases which hold that a grantee under a quit claim deed will acquire a good title as against a prior grantee of the land from the same grantor where the prior conveyance is not recorded as required by the registry act, and the grantee under the quit-claim deed is shown to be a purchaser in good faith and for a valuable consideration. *Fox* v. *Hall*, 74 Mo. 315; *Graff et al.* v. *Middleton et al.*, 43 Cal. 341, and *Frey* v. *Clifford*, 44 Cal. 335, belong to that class, and would seem to support the view of respondent's counsel. But the decisions in the two California cases appear to be questioned by Temple J., in *Allison* v. *Thomas*, 72 Cal. 562. The learned judge in delivering the opinion of the court, after remarking that a purchaser of the right, title and interest of a judgment debtor took subject to all equities and secret defects, at page 564 of the case, says: "We do not overlook the case of *Graff* v. *Middleton*, in which it was held that under the twenty-sixth section of the recording act, then in force, a quit-claim deed received in good faith and for a valuable consideration would prevail over a prior unrecorded deed. That decision is made to turn upon the language of that statute defining the word conveyance. This ruling was followed in *Frey* v. *Clifford*, 44 Cal. 343, where the description of the estate conveyed was 'all my right, title and interest' of the grantor. Unless these cases are justified by the peculiar wording of the statute, they seem to be against the decisions elsewhere upon the subject. It has been uniformly held that a conveyance of the right, title and interest of the grantor vests in the purchaser only what the grantor himself could claim, and that the covenants in such deed, if there were any, were

limited to the estate described." Citing in support of the view a number of authorities.

I have no particular fault, however, to find with the doctrine that a grantee under a quit-claim deed acquires a good title to the property as against a prior grantee thereof under the circumstances above mentioned. Where the grantor in such a case is in possession of the property, and executes the deed for a valuable and adequate consideration to the grantee who takes possession of it under the deed, I think it would be a wholesome and just rule to hold that his title to the property was superior to that of the grantee under the prior unrecorded conveyance, or to any outstanding equity against the property of which he had no notice. But whether he would be able to assert such superiority of title, under the strict rules of law, I express no opinion as it is unnecessary to do so under the circumstances of this case. I do, however, maintain that a grantee under a mere quit-claim deed reciting a nominal consideration, where no possession of the property is given under the deed, acquires no right to it as against a prior grantee, whether the deed of such grantee be recorded or not.

The view which I entertain upon this subject is well expressed in the concluding part of an article by Charles C. Marshall, published in vol. 23, page 244, of the Albany Law Journal, which is as follows: "It will be seen from this review of the authorities that the force and effect of a deed of quit-claim is a matter not requiring adjudications by the courts. Its force is certainly dependent not upon its distinguishing words, but upon the intention of the parties as expressed in the deed. It may, in the absence of possession by the grantee or releasee, be void, as stated in *Branham* v. *Mayor*, and *Bennett* v. *Irwin, supra;* or if an intention to convey be recited, as in *Lynch* v. *Livingstone, supra*, it may have the force and effect of a deed of bargain and sale. The intent seems to be the controlling element. And this may be expressed in curious ways,—by a formal recital, by the existence of some former estate in the

release, by words of grant other than 'remise, release and quit-claim.' Indeed, an adequate consideration or a covenant of warranty seems in some of the cases to imply an intent to convey the estate, as in the Massachusetts cases above referred to. But it is difficult to see wherein an intent can be implied in a naked quit-claim, by which we mean a quit-claim deed without covenants, and expressing only the nominal consideration of one dollar. As above intimated, it seems a matter of some doubt whether the protection of the recording acts could be extended under such a deed, for such a deed is perfectly consistent with the existence of a prior unrecorded deed to some third person. As it purports to release only such right as the releasor may have in the premises described, and as its nominal consideration of one dollar must in most cases be conspicuously inadequate, there seems sufficient to put the purchaser on his guard. If A., being actually vested with the fee to certain real estate, executes a quit-claim deed thereof to B., it is certain the fee would pass. The question is, is the record conclusive evidence of the existence of the fee in A.? If A. had conveyed the fee to C. by a prior unrecorded deed, what is to prevent C. from setting up his unrecorded deed when there is nothing on the record from A. save the quit-claim deed? The two deeds do not conflict. The quit-claim deed with its nominal consideration purports to convey only such rights as A. may actually have. It may be something or nothing. And the recording act, it is suggested, will not give to an instrument of record any greater force or larger meaning than that expressed by its words."

The same view, substantially, is also expressed by Watts, J., in delivering the opinion of the court in *Thorn* v. *Newsom*, 53 Am. R. 747; 64 Tex. 161, wherein he says: "While non-registered deeds are declared void by the statute as to subsequent purchasers for value and without notice, still the doctrine is well settled that a subsequent purchaser, although for value and without notice, who takes under strictly a quit-claim deed, that is, one by which

the chance of title, and not the land itself, is not conveyed, will not be accorded the protection of the statute, for the obvious reason that he contracted for the interest only that his vendor then had in the land. If the vendor had previously divested himself of the title to a portion or all of the land, to the extent of the divesture, there would be no right remaining in the vendor to pass by the quit-claim to the vendee. It is the then interest of the vendor for which he contracts, and it is to such interest only that he is entitled under the quit-claim deed."

There are many other authorities bearing upon this question which might be noticed, but they are too numerous and extensive to attempt it. Several of them, notably *Chapman* v. *Sims*, 53 Miss. 154, and *Fox* v. *Hall*, 74 Mo. 315, support the position assumed herein by respondent's counsel. I think, however, that the weight of authority and reason is against it.

The circumstances under which the deeds, in the Elliot line of title herein, were executed are not shown in the stipulation of the parties upon which the case was tried. All that appears therefrom is that Elliot quit-claimed the land and 240 acres of other land to DeLashmutt in June, 1881, and DeLashmutt, in August, 1881, quit-claimed it back to Elliot; then Elliot quit-claimed it to Wood August 21, 1881, and Wood, in November, 1881, quit-claimed it to Chapman, who in the same month quit-claimed it back to Wood. After the parties had thus tossed about their pretended title to the property for more than a year, Wood, on the nineteenth day of September, 1882, executed the warranty deed to Cavanaugh, upon which the respondent's counsel predicates his point that "a quit-claim deed as a part of a chain of title is sufficient." This deed is the only deed which purports to convey the land, though the subsequent ones from Cavanaugh and his grantees contained covenants against the grantor. The facts in the case are not therefore like those in *Sherwood* v. *Moelle*, 36 Fed. Rep. 478. There the chain of title was made up of warranty deeds, with the exception of one quit-claim deed; while here it is

made up of quit-claim deeds, with the exception of one warranty deed. The facts in the two cases also differ in another particular. In *Sherwood* v. *Moelle* the testimony showed that the grantee in the quit-claim deed "acted in good faith, in ignorance of the outstanding title not apparent of record, and paid full value for the land"; while in this case there is no evidence upon those points except that the grantee DeLashmutt took the conveyance from Elliot without actual notice from Elliot and wife, except such as might be presumed or inferred from the character of the deed or condition of the county records. But the main difficulty in the respondent's case is that Wood had nothing in the premises to convey or that Cavanaugh could expect to receive; he had no possession of the land, either actual or constructive. Foster and his grantees were in the constructive possession of it under the deed from Elliot and wife to Foster. The deed to DeLashmutt and from him to Wood conveyed no interest in the land to either of them. Elliot had neither possession, right to possession nor right of property therein. If he had had seisin of the land his deed to DeLashmutt and the deed from DeLashmutt to Wood might have vested it in the latter and thereby have constituted a claim of title. And I am not able to understand from the said stipulation how said last-named parties under the said quit-claim deeds can be said to have been subsequent purchasers "of the same real property or any portion thereof," which was conveyed by Elliot back to Foster, within the meaning of section 3027, Ann. Code; and if their said transactions did not constitute them subsequent purchasers of the same property, then the conveyance to Foster was not affected thereby, and the deed to Cavanaugh did not entitle him and his grantees to the protection of said provision of the Code.

The judgment will be reversed and the cause remanded as before indicated.