Frost Thorn et al. v. D. P. Newsom.

(Case No. 5316.)

1. Subsequent purchasers — Quitclaim deed.— Although non-registered deeds are void as to subsequent purchasers for value without notice, still it is well settled that a subsequent purchaser, although for value and without actual notice, who takes under a quitclaim deed, will not be protected, since he contracted for only the interest his vendor had at the time of the transaction.

2. Collateral attack.— Where a court having jurisdiction of the person and subject-matter decided that a bond for title was for the conveyance of land, *held,* that in a collateral proceeding it could not be shown that the bond was merely for a quitclaim deed, the judgment of the court in the former action being evidence of a good title to the land.

Appeal from Wise. Tried below before the Hon. C. C. Potter.

On May 5, 1876, Frost Thorn, Jr., Wm. T. and Mary Garner brought this suit against appellee and others, for the recovery of the north half of the league of land patented to George H. Duncan. They derived title through a contract between their deceased father, Frost Thorn, Sr., and Geo. H. Duncan, by which the former was to locate the certificate and secure the patent for one-half of the land, alleging compliance upon his part with the contract. Also that after the death of Thorn and Duncan, the heirs of the latter acknowledged the right of the heirs of the former to a one-half interest in the land. And in September, 1871, the parties made a partition of the land, in which Duncan's heirs were allotted the south half and Thorn's heirs the north half of the league, which is situated on the line partly in Wise and partly in Jack county.

This partition was subsequently reduced to writing in the form of a deed of partition, and signed as well as acknowledged by the parties. This instrument bore date November 25, 1871, but was acknowledged in February and March, 1873.

After the original suit was brought the plaintiffs all died, and thereafter the suit was prosecuted by their heirs acting through guardians *ad litem*.

Appellee Newsom claimed title to two hundred acres of land situated on the north of the league, and properly described in his answer, as an innocent purchaser for value and without notice of any adverse claim, by purchase and deeds of general warranty from Felix Mudd, one for one hundred and twenty-five acres, dated January 17, 1873, and filed for record January 20, 1873; the other for seventy-five acres, bearing the same date and filed for record at the same time as the first deed, disclaiming as to the balance of the land sued for. This title was derived through Mudd as follows: Conveyance by all the heirs of George H. Duncan, deceased, the original grantee, to their brother, James Duncan, conveying their entire interest, right, title and claim to the land. This deed bore date July 3, 1872. James Duncan executed to Felix Mudd a bond for title, by which he bound himself to execute and deliver to Mudd a deed with special warranty by the 1st day of September, 1872, conveying to Mudd "his and all his interest secured in and unto the said land, by deed" from his brother. Mudd brought suit upon that bond in the district court of Wise county, and on November 16, 1872, judgment was therein rendered in favor of Mudd, by which he recovered of James Duncan the land, and which is therein fully described.

Appellants replied that Newsom was not an innocent purchaser

for value and without notice of their rights, but that he had notice at and before his purchase, and if not, then under the facts and circumstances he was chargeable with notice, etc.

Appellee asked for a severance from the other defendants, which was granted.  Judgment in favor of Newsom, from which this appeal was taken and perfected.

Upon the trial below several bills of exception were saved by appellants to the ruling of the court excluding evidence.  Also complaint is made as to instructions given and charges refused.  The material question will be fully shown by the opinion.

The following is the bond for title executed by Duncan to Mudd:

"STATE OF TEXAS,                                          }
    *County of Kaufman.* }

"I, James Duncan, for the consideration of $1,000, gold coin, to me in hand to be paid, on the 1st day of September, 1872, this day made payable by note executed by George M. Hogan, that the said James Duncan, upon the full payment of the aforesaid note, being the full consideration for the said James Duncan's right, title and interest in and unto one league of land situated in the counties of Wise and Jack, state of Texas, the same being located in one body, the said lands being patented under date, the 11th day of January, 1858, vol. 11, No. 656, as shown from the records of the general land office of the state of Texas.  Now, said James Duncan agrees to convey to one Felix Mudd, his and all of his interest, secured in and unto the said lands by deed, bearing even date with this instrument, from his, said James Duncan's, four brothers, to wit: George, Alexander, David and Lacy Duncan; that said James Duncan, by virtue of said deed so executed by the said brothers, does by this instrument agree to convey to the said Mudd, on or about the 1st day of September, 1872, by special warranty title from himself and all persons claiming by, through or under him, the said Mudd, his interest, saving alone six hundred and forty acres deeded to George M. Hogan, which deed is now a matter of record in Wise county; the execution of the deed to Felix Mudd and the payment of this purchase money, $1,000, are to be simultaneous actions.  In the event of this money not being punctually paid on the 1st day of September as aforesaid, it shall bear ten per cent. interest until paid. In testimony of which I, James Duncan, have hereto set my hand and signature this 3d day of July, 1872.

"Attest:                                        JAMES DUNCAN.

    "ROBERT C. HOGGINS,
    "J. J. PYLE,
    "GEO. M. HOGAN."

*F. B. Sexton*, for appellants, cited : Horton *v.* Hamilton, 20 Tex., 611; Cook *v.* Burnley, 45 Tex., 115–19; Caruth *v.* Grigsby, 57 Tex., 259–65; Stegall *v.* Huff, 54 Tex., 196–7; Harrison *v.* Boring, 44 Tex., 259–64; Taylor *v.* Harrison, 47 Tex., 457–60; Wethered *v.* Boon, 17 Tex., 150; Freeman on Judgments, secs. 256, 257 and 258; Hobby's Texas Land Law, secs. 532, 540 and 1700; Wheeler *v.* Yenda, 11 Tex., 562; Milam County *v.* Bateman, 54 Tex., 168, 169; Mast *v.* Tibbles, 60 Tex., 305, 306; Hobby's Texas Land Law, secs. 231, 239, 242, 250.

*Davis & Garnett*, for appellee, cited : R. S., art. 4332; Graham *v.* Hawkins, 38 Tex., 628; Harrison *v.* Boring, 44 Tex., 255; Van Rensselaer *v.* Kearney, 11 How., 322.

WATTS, J. COM. APP.— The material question presented by the record is as to the effect to be accorded to the bond for title, and the judgment thereon rendered against James Duncan and in favor of Felix Mudd. It is urged that, by the terms of the bond, Mudd contracted for a quitclaim deed, and the judgment for the recovery of the land must be limited in its operation to the scope and object of the intention of the parties as expressed in the bond. As resulting from these conclusions, it is asserted that Newsom is chargeable with all defects in the chain of title under which he purchased, and affected to the same extent by unrecorded conveyances and outstanding equities, as was his vendor, Mudd, who, it is claimed, held under a quitclaim title only.

While non-registered deeds are declared void by the statute as to subsequent purchasers for value and without notice, still the doctrine is well settled that a subsequent purchaser, although for value and without actual notice, who takes under strictly a quitclaim deed, that is, one by which the chance of title, and not the land itself, is conveyed, will not be accorded the protection of the statute, for the obvious reason that he contracted for the interest only that his vendor then had in the land. If the vendor had previously divested himself of the title to a portion or all of the land, to the extent of the divestiture there would be no right remaining in the vendor to pass by the quitclaim to the vendee. It is the then interest of the vendor for which he contracts, and it is to such interest *only* that he is entitled under the quitclaim deed.

In this case it is not necessary to determine whether a vendee who purchases from one holding under a quitclaim deed, pays value and takes a conveyance of the land with covenants of general warranty, without actual notice of an unrecorded deed existing prior to the

execution of the quitclaim deed to his vendor, would be protected by the statute as a subsequent purchaser for value, and without notice. Because it will be seen from an examination of the terms of the bond for title that it is questionable whether the contract was for the chance of title or for an absolute conveyance of the land.

And in the determination of that question resort should be had to the circumstances attending the transaction, the primary object being to arrive at the intention of the contracting parties. For if their intention was that the one purchased and the other intended only to sell his interest in the land, then it would be held that the bond called only for a quitclaim deed. On the other hand, if the obligee intended to contract for an absolute conveyance of the land, and the obligor intended to bind himself to make that character of conveyance, even though it was upon special warranty, nevertheless it would be a conveyance of the land, as distinguished from a release or transfer of merely the obligor's right. Harrison v. Boring, 44 Tex., 263; Van Rensselaer v. Kearney, 11 How. (U. S.), 322; Sweet v. Green, 1 Paige, Ch., 476.

That was a practical question for the consideration of the court in the suit by Mudd upon the bond. And the judgment there was for the recovery of the land, not merely the interest that James Duncan had in it. By the statute then in force the court had full authority to pass the title by the decree. P. D., art. 1481. Such evidently was the intention of the court, and such is the effect of the decree rendered.

Hence it appears that the construction placed by the court upon the bond for title was that it called for an absolute conveyance of the land. And it is not material to inquire whether the court did or not err in that construction of the bond; for, as it had jurisdiction both of the person and subject-matter, so long as that remains a subsisting decree, it is not subject to collateral attack on the ground of error, and will constitute the evidence of Mudd's title, and upon which appellee had the right to rely.

It appears from the evidence that appellee paid full value for the land. The transfer of the small note to an innocent third party, and the recovery of a judgment thereon against appellee, fastens upon him the liability, and, in contemplation of law, is equivalent to a payment by him.

Appellee testified that he purchased the land in good faith, and without notice of any adverse claim whatever, and that he paid a valuable consideration for the same.

There is nothing in the record that militates against his evidence; on the contrary, he is supported by the statements of other witnesses.

Upon that issue the court instructed the jury that, if appellee purchased the land in good faith, and for value, without notice of the claim of appellants, and could not have known of it by the exercise of ordinary diligence, then to find for appellee. But, if appellee knew of the claim of appellants, or by the exercise of ordinary diligence might have known, then to find for appellants.

In our opinion the particular issue was properly submitted by the court, and that the verdict is sustained by the evidence; while the charges asked by appellants and refused by the court assumed that appellee was chargeable with constructive notice of the adverse claim, which, as has been seen, is not true. Therefore the court did not err in refusing these instructions.

All the other questions relate to immaterial matter, which could not have had any effect upon the result.

Our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted May 12, 1885.]