PRIDGEN v. COOK et al.   (No. 8345.)*

(Court of Civil Appeals of Texas. Ft. Wortn. March 11, 1916   Rehearing Denied April 8, 1916.)

1. TRIAL ⊜⟝311—CONDUCT OF JURY—MISCONDUCT OF JUROR.

During deliberations as to alleged false representations the statement of one juror to the others of his knowledge of a "bogus check law," as bearing upon the deliberations, which statement probably influenced the jury, is conduct necessitating reversal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 739; Dec. Dig. ⊜⟝311.]

2. DEEDS ⊜⟝25—"QUITCLAIM."

Whether a deed is a quitclaim or not depends upon the intent of the parties appearing from the face of the instrument, the use of the word "quitclaim" not being absolutely decisive.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 49; Dec. Dig. ⊜⟝25.]

3. DEEDS ⊜⟝25 — "QUITCLAIM" — INTENTION OF PARTIES.

If it appears from the language of a deed that it was intended to convey the land itself, rather than such title as the grantor had, it is not a "quitclaim" deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 49; Dec. Dig. ⊜⟝25.

For other definitions, see Words and Phrases, First and Second Series, Quitclaim.]

4. DEEDS ⊜⟝109—QUITCLAIM—EVIDENCE.

The terms of the deed, the adequacy of the price or other circumstances, are admissible to show whether the purchaser bought the land or merely the chance of title.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 239, 280, 598-600; Dec. Dig. ⊜⟝109.]

5. DEEDS ⊜⟝120—TITLE CONVEYED.

A deed conveying "just such title as was received from the said trustees" by a certain deed, held to bind the grantor to convey the same character of title as that possessed by the trustees.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 375-393, 401, 407-412, 416-454; Dec. Dig. ⊜⟝120.]

6. APPEAL AND ERROR ⊜⟝1069(1)—HARMLESS ERROR—NOT AFFECTING RESULT.

Where the case is one calling for a peremptory instruction in favor of appellee, misconduct of a juror is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4136; Dec. Dig. ⊜⟝ 1069(1).]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Action by Mrs. Anne Andrews and others against R. H. Cook and others. From a judgment for R. H. Cook and another against a codefendant, Charles Pridgen, he appeals. Affirmed.

T. R. Boone, of Wichita Falls, for appellant. Carrigan, Montgomery & Britain, of Wichita Falls, for appellees.

BUCK, J.   On February 16, 1914, Mrs. Anne Andrews and her two children, W. E. Andrews and Mary Andrews, the latter a minor, all of McLennan county, filed suit in the district court of Wichita county in the form of trespass to try title against R. H. Cook, W. J. Sheldon, Charles Pridgen, J. E. Meadows, and D. T. Cross, all of whom were alleged to reside in Wichita county, alleging that plaintiffs, Mrs. Andrews as the surviving wife, and the other plaintiffs, as the children, were the sole heirs at law of J. B. Andrews, deceased. That on or about July 7, 1910, plaintiffs were lawfully seised, and holding and claiming the same in fee simple, of lot 21, block 64, in the town of Electra, Wichita county. The petition contained the usual allegations in trespass to try title suits of unlawful entry, etc., on the part of defendants.

Defendants R. H. Cook and W. J. Sheldon in their answer alleged that they bought the lot from defendant Pridgen and that Pridgen represented to them that he owned and held same under a perfect title. That pending the negotiation of sale, Cook and Sheldon discovered that the record disclosed that the title to said lot had been conveyed by W. H. Wiseman et al., trustees, to one J. B. Andrews, and that Pridgen had purchased the lot from one J. B. Anderson. That they inquired of Pridgen how it happened that they held title to the lot through a deed from J. B. Anderson, while the record disclosed that the deed from the trustees had been made to J. B. Andrews. That Pridgen explained such apparent discrepancy by saying that he had talked to one Sol Williams who, as the promoter of the sale by the trustees aforesaid, was more familiar than any other person with all the details of said sale, and that said Williams stated to him (Pridgen) that the recording by the county clerk of Wichita county of the name of the vendee to said lot was the mistake of the trustees and that said record should have shown the name of said vendee as J. B. Anderson, who was really the man who had bought said lot and was entitled to own the same. That these two defendants had no reason to doubt the accuracy and truthfulness of the statement alleged to have been made by Pridgen to them, but accepted and relied upon it as true. He further agreed to convey to said Cook and Sheldon a good title, such a title as was received from the trustees of the town of Electra, to wit, W. H. Wiseman, Geo. McDaniel, and G. P. Brunton. They further al-

leged that at the time this representation was made by Pridgen to them they knew that the three trustees had owned a good title to the lot in controversy and that they (Cook and Sheldon) relied upon the representations made by Pridgen, paid to said Pridgen the sum of $500 in cash, and agreed to convey and deliver to him an undivided one-half interest in a brick wall which they agreed to build on the south line of said lot. Defendants further pleaded that since the filing of this suit they had become satisfied that plaintiffs owned and were entitled to the exclusive possession of said lot, and that they felt constrained to purchase the same from plaintiffs at whatever price they might be able to secure it. They further alleged that the representations made by Pridgen were untrue at the time they were made and were falsely and fraudulently made by said Pridgen for the sole purpose of inducing the defendants Cook and Sheldon to purchase said lot, and that at the time said Pridgen made said statements he knew that he did not own a good, or even merchantable, title to said lot, and also knew that said Sol Williams had never made to him the statements claimed.

Charles Pridgen, in answer to Cook's and Sheldon's plea over, denied the several allegations as to fraud and as to representation made, and alleged that in good faith he had bought the lot from one J. B. Anderson and wife and paid a valuable consideration therefor on or about July 1, 1910. That Cook and Sheldon were fully aware of all the facts and circumstances relative to his (Pridgen's) title, but in spite of said facts they accepted same, and therefore were estopped to claim any right over and against him (Pridgen).

The case was submitted to a jury on special issues, and the jury found as follows: (1) That Charles F. Pridgen did make false representations to defendant Cook and Sheldon in regard to the title of the lot in controversy; (2) that Cook and Sheldon did not purchase the lot in controversy from C. F. Pridgen, taking the risk of the title; (3) that the reasonable value of the undivided one-half interest in the wall mentioned in defendants Cook's and Sheldon's pleading was $175.

It having been admitted by all parties defendant, who were in court, that plaintiffs were entitled to judgment for the title and possession of the lot involved, judgment was rendered on the verdict of the jury in favor of the plaintiffs against all parties defendant for the land sued for, and for costs, and judgment was rendered in favor of Cook and Sheldon and against Charles F. Pridgen for the sum of $675. Defendant Pridgen appeals.

The evidence shows that the title to the lots in Electra was vested in the three trustees hereinbefore named, and that a public sale was conducted by Sol Williams, and that the lots, some 1,800, were sold to various persons. One was purchased by J. B. Andrews, who lived near the town of La-

grange on a farm. Pridgen testified that some three or four years before the trial he examined the record and found that title to this lot was in J. B. Andrews, and that he addressed a letter to J. B. Andrews at Lagrange, Tex., offering to buy the lot at a stated price; that in about three weeks he received a letter from J. B. Anderson, or rather from his wife, Mrs. Eva Anderson, at Spokane, Wash., saying that her husband was out on a cattle ranch some distance from Spokane, and that when he came in she was satisfied he would take the price offered for the lot. That later he (Pridgen) sent a deed to Anderson, which was duly executed by Anderson and his wife and returned with draft attached for some $57. Pridgen denied making any false representations to defendants Cook and Sheldon, and testified that at the time of the sale he told them, or rather told Cook, with whom he claims to have had all the conversations relating to the lot, nothing as to the character of his title; that Cook offered to give him $500 for the lot and a one-half interest in the brick wall, and that he accepted said offer, furnishing an abstract of title. He further testified:

"I never did mention that lot to Sheldon in any shape or form, nor he to me at no time nor place, and the first time that Bob Cook ever said anything to me about it it seems that he borrowed some money on that lot. If I remember aright it was about a year after this trade was made he struck me in town. He said, 'That lot belonged to J. B. Andrews;' I said, 'You had an abstract;' he said, 'Yes.' He asked me what I knew about it. I told him all that I knew about it was what Sol Williams told me. After I got this deed, I brought it up here to put on record and Walter Reed called my attention to the discrepancy in it and I called Sol Williams up at Ft. Worth and asked him about it; there were records of those deeds up there in bad shape. I called Sol up. I asked him who it belonged to. When he answered the phone he was in the Elks' poolroom, so he said. So I said, 'The records here show that it belonged to Mr. Andrews, and I have a deed from Anderson.' He said, 'It is a technical error; I have got an interesting game of pool on here and after this game of pool is over I will look it up and write you.'"

Pridgen claimed that he never received any further communication from Sol Williams, but that some eight or ten months after this conversation he went down to Sol Williams' office and with the stenographer looked over the books.

The testimony of other witnesses discloses the fact that J. B. Anderson was the railroad agent at Lagrange some time prior to 1910, and that, perhaps on account of bad health, he left Lagrange and went to Washington, where, after the execution of this deed, he died; that J. B. Andrews was a farmer living some miles out of Lagrange, but that at the time of the Pridgen letter he was dead, and that Anderson had moved to Washington. This situation explains perhaps how the letter, if addressed to Andrews, was forwarded and delivered to Anderson.

[1] Appellant's first assignment of error complains that the verdict of the jury was

influenced by their considering matter out of the record and by their receiving in the jury room and from other sources than the court, instructions as to the law of the case. It appears that during the deliberation of the jury and after they had inquired of the court as to whether or not they could assume that a false act of conveyance was a false representation, and while the jury were divided as to whether or not Pridgen had made any false representations to Cook and Sheldon, one of the jurors stated to the others that he had read what is known as "the bogus check law," and that from the terms of said law, as interpreted by him, he was satisfied and had become convinced that the defendant Pridgen should be held to have made the false representation in regard to the title to the lot. Without going into further details as to this matter, it may be said in passing that the investigation made while the motion for new trial was pending, and under the direction of the court, to our minds discloses the fact that in all probability the jury were improperly influenced and misled by the injection of this foreign matter, and unless the admitted facts would have justified the trial court in giving peremptory instructions in favor of Cook and Sheldon as against Pridgen, the conduct of the jury aforementioned would require a reversal. But inasmuch as we have concluded that the case is one that calls for a peremptory instruction, the error becomes harmless.

The deed from Pridgen to Cook and Sheldon is as follows:

"Chas. Pridgen et ux. to R. H. Cook. Dated—Oct. 5, 1911. Filed—Oct. 26, 1911, at 8:37 a. m. Recorded—Dec. 14, 1911, at 9:00 a. m. in Book 59, page 113, Deed Records of Wichita County, Texas. Consideration—$800.00 and one-half interest in a brick wall to be built on the south line of said lot by R. H. Cook and W. J. Sheldon to us paid in cash, the receipt of which is hereby acknowledged.

"Conveys unto R. H. Cook and W. J. Sheldon of the county of Wichita, state of Texas, said lot more particularly described as follows, to wit: Lot 21 in block 64 of the town of Electra, Wichita county, Texas, according to the recorded plat of said town, together with all the rights and appurtenances thereto belonging or in any wise appertaining, said lot hereby conveyed being the same conveyed by H. W. Wiseman, Geo. McDaniel and J. P. Brunton, trustees of the town of Electra, said deed being recorded in the deed records of Wichita county, Texas, to which deed and its record reference is made for a more accurate description.

"To have and to hold the above-described premises together with all the rights and appurtenances thereto in any wise belonging unto the said R. H. Cook and W. J. Sheldon just such title as was received from the said trustees of the town of Electra as aforesaid.

"Witness our hands this 5th day of October, A. D. 1911.                Chas. Pridgen,
                                   "Maude Pridgen."

The deed was acknowledged in due form.

[2, 3] In his pleadings Pridgen alleged that Cook and Sheldon were fully aware of all the facts and circumstances relative to his title to said lot, but that in spite of said facts they accepted said title, and therefore were estopped from claiming any right under and against him (Prigden). While perhaps the pleader did not happily express himself so as to convey his intended meaning, yet it seems from the oral argument, as well as that contained in appellant's brief, that the claim intended to be presented by Pridgen was that the deed from him to Cook and Sheldon was, and was intended to be, only a quitclaim deed conveying such title as he (Pridgen) had, and that Cook and Sheldon knew the facts with reference to the title held by him (Pridgen), and accepted the deed as conveying only Pridgen's chance of title. We cannot so construe the deed. Whether a deed is a quitclaim or not depends upon the intent of the parties making it appear from the face of the instrument; the use of the word "quitclaim" not being absolutely decisive of the character of the deed. 8 R. C. L. p. 926, 6. If it appears from the language of the deed that the intention was to convey the land itself, rather than such title or chance of title as the grantor might have, it is not a quitclaim deed. Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850; Tram. Lbr. Co. v. Hancock, 70 Tex. 312, 7 S. W. 724; Laughlin v. Tips, 8 Tex. Civ. App. 649, 28 S. W. 551; Barroum v. Culmell, 90 Tex. 93, 37 S. W. 313.

[4] The terms of the deed, the adequacy of the price, or other circumstances, are admissible to show whether the purchaser bought the land or merely the chance of title. Carleton v. Lombardi, 81 Tex. 355, 16 S. W. 1081; Thorn v. Newsome, 64 Tex. 161, 53 Am. Rep. 747.

[5] It is apparent from the recitations of the deed under consideration that Pridgen intended to convey to Cook and Sheldon not only such title as he possessed at the time of the conveyance, but such title as the trustees of the town of Electra held and conveyed and therefore such title as J. B. Andrews received, and such title as was inherited by plaintiffs from J. B. Andrews. It was agreed in open court, as set out in the statement of facts, that the plaintiffs were the owners by and through mesne conveyances of the lot in controversy, receiving said title through a regular chain from the state. It was further agreed by all parties that the judgment should be affirmed as to plaintiffs. Since Pridgen covenanted to convey the title as held by the trustees of the town of Electra, and since he has agreed that J. B. Andrews, deceased, acquired a good title by reason of the deed from the trustees to him, and that the plaintiffs, claiming under J. B. Andrew's title, have a good title, it follows that the warranty in the deed from Pridgen to Cook and Sheldon binds the grantor to convey the same character of title as held by J. B. Andrews and the plaintiffs.

[6] Therefore the trial court would have been justified and should have peremptorily instructed the jury to find for Cook and

Sheldon against Pridgen for the purchase price of the lot. Both Cook and Pridgen testified that the consideration paid by the former to the latter for the lot was $500 and a one-half interest in the brick wall. The testimony, as we understand, is uncontroverted that the one-half interest in the brick wall was as found by the jury of the value of $175. Therefore it becomes immaterial as to whether any error is shown in the assignment heretofore mentioned, or in the second assignment complaining that the jury took into the jury room. During their deliberations the deposition of the witness Sol Williams.

The judgment of the trial court is hereby in all things affirmed.