**BAIRD v. RIDGEWAY et ux.  (No. 7272.)**

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1925.)

1. **Municipal corporations** ⊂═706(5)—Finding of negligence in operating automobile sustained.

Evidence that defendant was violating city ordinance in not giving plaintiff right of way, and drove across intersection of two streets at such speed as to lose control of automobile and cause collision, *held* to sustain finding of negligence on part of defendant.

2. **Trial** ⊂═306—Jury not permitted to come in contact with influence outside of testimony after retiring.

Juries must not be permitted to come in contact with any influence outside of testimony, after retiring to consider their verdict.

3. **Appeal and error** ⊂═1140(1)—Discussion by jury as to defendant being insured held to require remittitur of portion of damages awarded.

Jury's discussion of fact that defendant was insured, and was represented by an insurance agent, while deliberating, *held* to require remittitur of portion of damages recovered.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by W. H. Ridgeway and wife against O. C. Baird. Judgment for plaintiffs, and defendant appeals. Affirmed on condition of remittitur.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.
Arnold & Cozby and T. H. Ridgeway, all of San Antonio, for appellees.

FLY, C. J. This appeal has been perfected from a judgment for $5,900 based on a claim by appellees, W. H. Ridgeway and his wife, Elsie Mae Ridgeway, for damages arising out of personal injuries received by the last named in a collision between an automobile driven by her and one driven by appellant. Thirty-one special issues were submitted to the jury, and upon the responses thereto the judgment was rendered.

The first proposition, based on the first to the seventeenth assignments of error, inclusive, although involved and multifarious, embodies a complaint against the sufficiency of the testimony to sustain the verdict. The second proposition is unnecessarily lengthy as it is, in effect, only a complaint that the verdict was excessive; and the third proposition complains of the misconduct of the jury in receiving testimony in the jury room and rendering an increased verdict on the ground that appellant would not pay the judgment, but it would be collected from liability insurance held by appellant against injuries inflicted by his automobile.

[1] We overrule the first proposition and hold that the evidence is sufficient to show negligence upon the part of appellant, and that the collision between the two automobiles and the injuries to Mrs. Ridgeway were caused by such negligence. Appellant was violating an ordinance of the city in not giving Mrs. Ridgeway the right of way, and was guilty of driving his automobile across an intersection of two streets at such a rate of speed as to lose control of it and cause the collision. The jury was justified in finding that Mrs. Ridgeway was not guilty of contributory negligence and that she was injured by the negligence of appellant. Mrs. Ridgeway was moving south on Hackberry street, and appellant was moving west on Hays street, and was therefore approaching Mrs. Ridgeway from her left. Had he obey-

ed the ordinance the collision would not have occurred.

[2, 3] Upon the motion for new trial evidence was heard as to the alleged misconduct of the jury while considering their verdict, in discussing the fact that appellant was insured against damages arising from injuries inflicted by his automobile upon Mrs. Ridgeway. All of the jurors testified, and 11 of them stated that the matter of insurance was mentioned after the jury retired. All of them, of course, denied their verdict had been influenced. Each of them may have been honest and sincere in his statement, but it must have influenced them nevertheless, because no one can tell the insidious influence that acts or words, however trivial or lightly spoken, may have upon his action without his apprehending or realizing such influence. Juries must not be permitted to come in contact with any influence outside of the testimony, however subtle and impalpable it may be, after retiring to consider their verdicts, not only that the purity and righteousness of the system may be maintained but that the rights of the litigants may be protected. No secret influence should be permitted to reach and be entertained by a jury because if such influences, when discovered, are not discountenanced and condemned, jury trials would inevitably become the machinery to protect wrong and oppression, rather than to uphold the law, dispense justice, redress the wrongs, and protect the rights of the citizen. That the matter of insurance was broached in the jury room is not denied, and while every one of the jurors tried to create an impression that there was merely a casual reference to the subject of insurance, the fact remains that 11 of the 12 jurors admitted hearing the subject mentioned, and it or some other subject foreign to the evidence must have been discussed for the foreman, before leaving the jury room to return the verdict, requested the jurors not to discuss what took place, and that "it would be best that the jurors say nothing about it." There was testimony that it was mentioned, before the vote was taken by the jury as to the amount, that appellant had insurance. There must have been more than one reference to the insurance, for some of the jurors swore that it was remarked that the defendant would not have to pay the damages but that the insurance company would; and one swore that it was asked what Menger, who was present during the whole trial, had to do with the case, and another said that he was representing the insurance company. The talk about Menger occurred shortly after the retirement of the jury to consider their verdict, and this has peculiar significance from the fact that Menger had been fully discussed before the jury by learned counsel for appellees.

In some way the matter of insurance had been impressed upon the minds of the jury; attorneys for appellant stating that it was impressed upon the minds of the jury by the speech of an attorney for appellees, and attorneys for the appellees claiming that it was deliberately brought to the attention of the jury in order to create a ground for a new trial or a reversal. It may be that appellant endeavored to show the jury that he was insured, but, if so, it is not sufficiently plain from the record to sustain such a charge against him or against Menger, who seemed to be assisting in the case. The jury could not have known, from the mere fact that Menger was acting with the defense, that he was agent for an insurance company, and the only testimony that is given to identify him with an insurance company is that of the juror as to what was said by a juror in the jury room. The cross-examination of witnesses for appellees by an attorney for appellant only showed that Menger paid the amount due for repairs of the automobile and for the eyeglasses. He might have done those things for appellant, and he might have been assisting appellant and not an insurance company at the trial. All doubt was removed as to his status in the jury room, however, by the closing speech of counsel for appellees, and it was enough to excite the curiosity of almost any 12 men that could be chosen, and direct their attention to Menger, the agent of an insurance company. Counsel for appellees testified on the hearing of the motion for a new trial:

"Yes, I mentioned Mr. Menger by name to the jury; I did not tell the jury not to discuss Mr. Menger in connection with this case. In those words, I did not tell them not to ask any questions among themselves about Mr. Menger being in the case, not in those words. I told them not to mention or discuss Mr. Menger in any way, in any manner, shape, form or fashion, whether he had anything to do with this case or didn't have anything to do with this case."

That this found lodgment in the minds of the jury is evident from the fact that one of them, as soon as the jury room was reached, wanted to know what Mr. Menger's "part in the case" was, and was told by another juror that "he was representing the insurance company—insurance man, representing the insurance company." "A word to the wise was sufficient," and after that word the high amounts agreed upon by individual jurors were made known. The evidence could not have justified the sum of $10,400, insisted on by a number of the jurors, and can only be accounted for on the ground that the suggestion that an insurance company, and not one of the citizens of Bexar county, would pay the damages, had fallen into fertile soil and germinated into vitality and action. The effect of the discussion in the jury room cannot be avoided by the argument that all of them agreed at once that damages must be paid, and that the smallest sum suggested

by any juror was the amount of the verdict. We believe, in view of the facts, that the amount of $5,900, returned by the jury, was excessive, and that it must have been induced by matters outside the evidence.

We feel confident that the misconduct of the jury extended only to the amount of the verdict and are convinced that no other verdict than one in favor of appellees could properly have been returned by the jury. We think it apparent from the sums contended for by probably 11 of the jurors, and by the verdict that was rendered, that the discussion had as to an insurance company being liable for any amount found by the jury caused the suggestion of such large sums and the return of a verdict, the amount of which is not sustained by the facts, and it will not be permitted to stand.

If within 10 days the sum of $2,900 is remitted by appellees, the judgment will be affirmed for $3,000; but if the remittitur is not entered in the time named, the judgment will be reversed and the cause remanded.