## DALLAS RY. & TERMINAL CO. v. BURNS.
### No. 2827.

Court of Civil Appeals of Texas. El Paso.
May 11, 1933.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for appellant.

C. C. McDonald, of Wichita Falls, and E. M. Herndon, Jed C. Adams, and Russell Allen, all of Dallas, for appellee.

HIGGINS, Justice.

This is a personal injury suit brought by Burns against the appellant.

The plaintiff was a passenger on a street car in Dallas. He alleged that he signaled the car to stop and it did stop; and, as he attempted to alight and just as he placed one foot upon the ground, the motorman applied the automatic valve clutch or other power which caused the exit door from which plaintiff was stepping to suddenly close, securely pinning his right hip pocket, or some other portion of the seat of his trousers, making it impossible for him to extricate himself or get his other foot on the ground; that immediately and without warning the motorman started the car suddenly, whereupon his overalls tore loose, he was thrown to the ground, and feet hurled under the car and upon the tracks; resulting in the car running over his feet, necessitating amputation of both legs below the knees.

The defendant's theory of the accident was that the plaintiff safely alighted from the car, and having alighted he walked back about halfway of the car, got down, and purposely placed his feet upon the track, and in this manner deliberately inflicted the injuries of which he complains. Defendant also pleaded contributory negligence.

All defensive issues were found against the defendant.

Plaintiff's theory was submitted as follows:

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence that at the time and place alleged in plaintiff's petition that the motorman closed the exit door of said street car before plaintiff had time to safely alight?"

"Special Issue No. 2: Do you find and believe from a preponderance of the evidence that such act, if any, upon the part of the motorman was negligence?"

"Special Issue No. 3: Do you find and believe from a preponderance of the evidence that such negligence, if any, was a proximate cause of plaintiff's injuries?"

"Special Issue No. 4: Do you find and believe from a preponderance of the evidence, that said exit door, when closed, caught plaintiff's trousers in such manner as to prevent him from safely alighting?"

"Special Issue No. 5: Do you find and believe from a preponderance of the evidence that such closing of the car door by the motorman in charge, was negligence?"

"Special Issue No. 6: Do you find and believe from a preponderance of the evidence that such negligence, if any, was a proximate cause of plaintiff's injuries?"

"Special Issue No. 7: Do you find and believe from a preponderance of the evidence that the motorman in charge of said street car, after it had stopped, started same with a sudden jerk?"

"Special Issue No. 7-a: Do you find and believe from a preponderance of the evidence that the sudden jerk of said car, by said motorman, caused plaintiff to be thrown therefrom and injured as alleged in plaintiff's petition?" .

"Special Issue No. 8: Do you find and believe from a preponderance of the evidence, that such act, if any, upon the part of the motorman in charge of said street car, was negligence?"

"Special Issue No. 9: Do you find and believe from a preponderance of the evidence that such negligence, if any, was a proximate cause of plaintiff's injuries?"

These issues were all answered, "Yes."

Damages were assessed at $18,000, for which amount judgment was rendered.

■ The witness Price, the motorman, testified, substantially, that just after the car started his attention was attracted by a commotion, loud and excited talking among the negro passengers in the back end of the car; he stopped the car, went back, and asked what had happened. Several tried to answer, and one negro boy (Rhinehart) said something he did not understand. He asked the boy to repeat what he had said. The witness was not permitted to state the reply made, upon objection that it was hearsay, not spontaneous, but in reply to an inquiry. If permitted the witness would have testified the boy said "the man just got down on the street and stuck his feet under the street car and got them cut off."

This excluded testimony was admissible under the res gestæ rule. Res gestæ statements made by bystanders are admissible in evidence. Firemen's Ins. Co. v. Havron (Tex. Civ. App.) 277 S. W. 742; St. Louis, B. & M. Ry. Co. v. Watkins (Tex. Civ. App.) 245 S. W. 794; Missouri, K. & T. Ry. Co. v. Vance (Tex. Civ. App.) 41 S. W. 167.

■ If it is otherwise within the rule, it is not rendered inadmissible simply because it is made in response to a question. 17 Tex. Jur. 620, and cases there cited.

■ But the error in excluding the testimony was probably harmless in view of the fact that the boy, Rhinehart, was later called as a witness and testified that he saw plaintiff get down and stick his feet under the car.

It is asserted a peremptory charge in defendant's favor should have been given because the evidence fails to show appellant was operating the street car. There is no direct evidence that appellant was the operator of the car, but in the light of all the facts and circumstances reflected by the record it would not have been proper to give such a charge. The facts and circumstances reflected by the record are sufficient to raise an issue as to appellant's ownership and operation of the car. El Paso E. Ry. Co. v. Terrazas (Tex. Civ. App.) 208 S. W. 387.

The criticism made of the court's definition of "proximate cause" is without merit. Kirby Lumber Co. v. Cunningham (Tex. Civ. App.) 154 S. W. 288. See, also, cases cited in 50 C. J. 841, note 88.

We also regard as without merit the objections urged against issues 1, 4, 5, and 7, and think the same call for no discussion.

■ Error is assigned to the action of the court in overruling the motion of appellant, made at the conclusion of the opening argument for appellee, to require the attorney for appellee to fully open the case and to discuss the various issues submitted in the court's charge as well as the evidence.

The bill of exception supporting this assignment discloses that appellee's attorney, Mr. Herndon, made the opening argument and in a general manner discussed the testimony of the witnesses, designating some of them by name, and grouping most of the colored witnesses of appellant and discussing their testimony as a whole, and arguing that he believed the jury must find appellee Burns was injured by being hung in the door and thrown from the street car by a jerking of the same, but said attorney in such opening argument made no reference to the issues submitted in the court's charge, and discussed

no particular issue. The court's charge consisted of twenty-six special issues, the first nine of which related to issues of negligence on the part of the appellant and the issues of proximate cause pertaining thereto. The next fifteen issues related to contributory negligence upon the part of appellee. The twenty-fifth special issue was an issue of unavoidable accident, and the twenty-sixth was an issue on damages.

These facts were pointed out to the court in a motion made at the conclusion of the opening argument. The court's attention was called to the fact that the appellee's counsel still had forty-five minutes left for argument, and appellant did not know what position they would take on any particular issue or what evidence they would say supported or did not support any particular issue. Appellant was therefore given no opportunity to answer the argument of appellee on such issues. The motion was overruled, and appellant was required to make its argument, after which appellee, through his counsel, C. C. McDonald, made his closing argument of forty-five minutes, and in such closing argument discussed not only the testimony, but the various issues submitted by the court, including all the issues of appellant's negligence and the issues of contributory negligence of appellee, and the issue of accident, as well as the issue on the amount of damages.

This bill discloses a violation of District Court Rule 36, governing argument in the trial courts.

The facts disclosed by the present bill differ in no material respect from those shown in Teague Sewer Co. v. Benbrook (Tex. Civ. App.) 38 S.W.(2d) 845, and Bender v. Mettler (Tex. Civ. App.) 17 S.W.(2d) 182, which hold the rule was violated and that the error was reversible. The assignment presenting the question is sustained.

■■ Another bill of exception discloses the following:

After the evidence had closed and the court had given his charge to the jury and the argument had been concluded and the jury had retired to the jury room for deliberation, which retirement was on the afternoon of Thursday, May 26, 1932, and before the jury had answered any issues, they recessed until the next morning. It appears that on that night, to wit, May 26, 1932, and while the jury was separated and after the juror A. L. Mattinson had returned to his home and while he was alone and not in company with other jurors, they having been permitted to separate about 5 o'clock in the afternoon and had been instructed to reassemble the next morning at 9 o'clock, about dark on Thursday night, May 26th, the juror Mattinson was approached by some unknown person and asked if he would like to kill two birds with one stone, and asked by this person if he remembered a lawyer who had killed his brother, and that this person was one of the attorneys for the plaintiff in this case, and that if he would hang the jury he could get even with this lawyer and also make $300 for tying up the jury. The juror became indignant and told this unknown person that he was going to tell the court about it and that he wouldn't listen to this proposition; that after this, something was said about how he could get his money whether by cash or check, and this person told him no, he wouldn't give him a check, that the thing for him to do was to go over to the Interurban Building after the jury was discharged, the juror understanding and knowing that the offices of appellant were in the Interurban Building. The juror understood that this man, unknown to the juror, was offering the bribe in behalf of the Dallas Railway & Terminal Company, but he didn't know whom the man worked for, and didn't know as a fact that he was acting for the Dallas Railway & Terminal Company, and that as a matter of fact he didn't know who this man was or what his business was. On the following morning, and before the jury reassembled, the juror told these facts to the presiding judge, Honorable Claude M. McCallum, and told him not to say anything about it to the rest of the jurors, and that he did not say anything about such facts; that when he told Judge McCallum this, Judge McCallum told him he was mistaken, that the man referred to was not an attorney for the plaintiff in the case, but that the attorney was C. C. McDonald of Wichita Falls; that it was a fact that said juror's brother had been slain by a man whose name somewhat resembled McDonald, and that when Judge McCallum told him this he felt much relieved; that shortly after this conversation between the juror and the court, and after the jury had reassembled, information reached the attorney for appellant through a policeman to whom the juror had related the attempted bribe; that promptly after the receipt of such information, the appellant moved to discharge the jury, and when such motion was presented, the court, to wit, the Honorable Claude M. McCallum, related to appellant's attorney, in the presence of appellee's attorney, the conversation that he had had with the juror and his caution not to discuss the matter with the other jurors. The jurors at that time had not agreed on any issues or indicated in any manner how they stood on the issues and had had no further communications with the court. On receiving such information from Judge McCallum appellant re-urged its motion to discharge the jury and declare a mistrial because of the prejudicial effect which such purported bribe and such discussion with the court would naturally have on the juror Mattinson. The court overruled the motion and refused to discharge the jury, but kept the jury together

until they reached a verdict, which was shortly after 5 o'clock p. m. on Friday, May 27, 1932.

On a hearing of the motion for new trial, Juror Mattinson was examined and testified at length relative to these matters. He said he became indignant and bawled out the proposed briber and about considering such offer an insult, etc. His testimony shows that the man offering the bribe told him that he wouldn't pay him by check, but that he could get the cash over at the Interurban Building where the appellant's offices were located after the jury had been discharged. He said nothing to the jurors, but discussed it with Judge McCallum, and was advised by the judge not to say anything about it, and the judge explained to him that the lawyer referred to was not the one who had killed his brother, but appellee's attorney was Charlie McDonald, a lawyer at Wichita Falls. He did not know who the proposed briber was or whom he worked for, and didn't know that such person was representing the Dallas Railway & Terminal Company, but that he thought that such person worked for the Dallas Railway & Terminal Company from his conversation with him.

A juror accepted as impartial should remain so during the trial. Marshall v. Watson, 16 Tex. Civ. App. 127, 40 S. W. 352.

There was no proof connecting the appellant with the attempted bribery, and in a charge so serious it cannot be assumed appellant was in any wise connected therewith.

The offering of a bribe to a conscientious juror could only have the most prejudicial and damaging effect, so far as concerns the interest of the litigant who, the juror believed, was tendering such bribe.

The juror Mattinson was evidently a conscientious juror and upright man. The attempted bribery must have operated in his mind in a manner most prejudicial to appellant.

The facts disclosed made it the duty of the court to grant a new trial. Marshall v. Watson, supra; Albers v. S. A. & A. P. Ry. Co., 36 Tex. Civ. App. 186, 81 S. W. 828; Baird v. Ridgeway (Tex. Civ. App.) 268 S. W. 1058.

The matter referred to in the twelfth proposition will not arise upon retrial and need not be considered.

Misconduct of the jury is charged. The testimony given on the hearing of the motion for new trial shows the jury discussed the question of attorney's fees which appellee would have to pay; they discussed the manner of the operation of the step and the door on the street car, giving their own personal experiences and observations, and one of the jurors in particular gave his personal experience under a similar situation; the jurors likewise discussed the fact that most of appellant's testimony was given by negroes, and that they were unworthy of belief as a class; and also discussed a supposed offer of settlement the appellant had made to appellee.

There is no occasion to discuss this phase of the appeal. The Supreme Court and Commission of Appeals in recent years in various cases have made it plain that where misconduct of the jury is shown in a material matter and it is reasonably doubtful whether such misconduct affected the verdict, reversal must follow.

That the discussion relative to attorney's fees is reversible, see: Texas & N. O. Ry. Co. v. Parry (Tex. Com. App.) 12 S.W. (2d) 997; American Ry. Express Co. v. Sawyer (Tex. Civ. App.) 297 S. W. 873, 874; St. Louis S. W. Ry. Co. of Texas v. Smithhart (Tex. Civ. App.) 9 S.W.(2d) 146; Texas & P. Ry. Co. v. Van Zandt (Tex. Com. App.) 44 S. W.(2d) 950, reversing (Tex. Civ. App.) 30 S.W. (2d) 503; Red Star Coaches v. Lamb (Tex. Civ. App.) 41 S.W.(2d) 523.

That the discussion of personal experiences and observations concerning the door and step of the street car and the experience of one of the jurors under similar circumstances is reversible, see: El Paso E. Ry. Co. v. Gambrell (Tex. Civ. App.) 292 S. W. 577; Galveston, H. & S. A. Ry. Co. v. Brassell (Tex. Civ. App.) 173 S. W. 522; Gulf, C. & S. F. Ry. Co. v. Young (Tex. Civ. App.) 284 S. W. 664, 673; Manes v. J. I. Case Threshing Mach. Co. (Tex. Civ. App.) 204 S. W. 235; Pridgen v. Cook et al. (Tex. Civ. App.) 184 S. W. 713; City of Fort Worth v. Young (Tex. Civ. App.) 185 S. W. 983.

With reference to the discussion of the supposed offer to compromise, see: St. Louis Southwestern Ry. Co. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765; Texas & N. O. Ry. Co. v. Ewing (Tex. Civ. App.) 46 S.W.(2d) 398.

The record shows that most of the testimony in appellant's behalf was given by negroes who were on the car at the time of the accident. Some of the jurors in their discussion expressed the belief that negroes as a class are unworthy of belief.

The jurors are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. This being their prerogative, jurors, in the exercise thereof, cannot be justly regarded as guilty of misconduct. The discussion relative to the credibility of the negro witnesses cannot be treated as misconduct.

Reversed and remanded.